USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___2/25/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SONDEST LOUIS,

                              Plaintiff,

              -against-

NEW YORK PRESBYTERIAN HOSPITAL,

                              Defendant.

23-CV-02044 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

*Pro se* Plaintiff Sondest Louis is a former employee of New York Presbyterian Hospital ("New York Presbyterian" or "Defendant"). During his employment, Plaintiff took leave pursuant to the Family and Medical Leave Act ("FMLA"). Before Plaintiff returned to work, New York Presbyterian fired him. Plaintiff brings claims for FMLA interference and retaliation based on his termination. Defendant moves for summary judgment on both claims. For the reasons set forth below, Defendant's motion is DENIED.

## RELEVANT FACTS

Plaintiff began working as a Dietary Aide for New York Presbyterian in 2003.[1] Dkt. No. 43 ¶ 5; Dkt. No. 55 ¶ 1. During his employment, Plaintiff transitioned to the role of a Dialysis Technician, a role that he held until he was terminated in July 2021. Dkt. No. 43 ¶¶ 5–6; Dkt. No. 25 ¶ 12. Plaintiff alleges that, around 2013, he was involved in an accident that caused "a serious and lasting injury to his spine." Dkt. No. 25 ¶ 15. As a result, Plaintiff required and took FMLA leave several times during his employment. Dkt. No. 43 ¶ 7. New York Presbyterian

---

[1] The relevant facts, taken from materials submitted in connection with the pending motion, are either undisputed or described in the light most favorable to Plaintiff. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

1

contracts with a third-party administrator called Unum to administer its employees' FMLA leave. *Id.* ¶ 9; Dkt. No. 55 ¶ 9. According to New York Presbyterian, Unum exclusively reviews, assesses, and makes determinations concerning employees' FMLA leave requests. Dkt. No. 43 ¶ 10.

In April 2021, Plaintiff requested and Defendant approved FMLA leave from April 5, 2021, through May 17, 2021. *Id.* ¶ 15. Approximately one month later, on May 18, 2021, Unum sent Plaintiff a letter stating that Plaintiff's FMLA leave was approved through May 17, 2021. Dkt. No. 47-1 at 2. The letter also noted that Plaintiff appeared to require additional leave beyond May 17, 2021 that had not yet been approved; it stated, "[o]ur records indicate additional leave is needed beginning May 18, 2021." *Id.* To that end, the letter set forth a series of "next steps." *Id.* The next steps section instructed Plaintiff: "[y]ou are required to provide certification supporting your leave which you may fax or mail to Unum" and "[h]ave the health care provider complete the attached Certification of Health Care Provider form and return to Unum by **June 05, 2021**." *Id.* The letter noted that Unum would be "unable to approve your leave if the certification is not received by this date." *Id.* There is no indication in the record that Plaintiff submitted any additional materials by June 5, 2021.

On June 14, 2021, Unum sent Plaintiff a letter informing Plaintiff that his request for leave from May 18, 2021 onwards was denied. Dkt. No. 49-2 at 2. The letter explained: "[o]n May 18, 2021, we notified you of the requirement to provide medical certification/ documentation by June 05, 2021. We have not received complete and qualifying medical certification/documentation." *Id.* Ten days later, on June 24, 2021, New York Presbyterian sent Plaintiff a letter advising Plaintiff that his continued absence from work was "unauthorized" since Unum had denied his request for FMLA leave beyond May 17. Dkt. No. 46-2 at 2. The

letter required Plaintiff "to get cleared by Workforce Health & Safety and return to work by Friday, July 2, 2021" and warned him that "[f]ailure to return will result in termination of employment." *Id.*

Meanwhile, after denying Plaintiff's request for FMLA leave beyond May 17, Unum continued to be in contact with Plaintiff and his physician regarding the requested continuation of Plaintiff's FMLA leave. Plaintiff claims that he called Unum at some time on or after June 21, 2021 and that Unum informed him that his "doctor's note was received but the doctor didn't attach[] a progress note." Dkt. No. 55 ¶ 18. Plaintiff alleges that he asked Unum "to send it directly to the doctor via fax." *Id.* On June 29, 2021, Unum faxed Plaintiff's physician a medical certification form with a cover letter that stated, "[e]nclosed is the medical certification form for your patient . . . who has requested a leave due to a serious health condition." Dkt. No. 55-1. The letter did not include a specific deadline for Plaintiff's physician to respond and instead requested that the physician "complete and return [the form] to Unum as soon as possible." *Id.* Plaintiff's physician completed the certification on July 8, 2021. Dkt. No. 47-4 at 1.

Plaintiff did not return to work on July 2, 2021. Dkt. No. 43 ¶ 22; Dkt. No. 55 ¶ 22. At his deposition, Plaintiff stated that he was not medically cleared to return to work by that date and could not have returned to work until September 2021. Dkt. No. 43 ¶ 29. On July 8, 2021, New York Presbyterian sent Plaintiff a letter terminating his employment. Dkt. No. 46-3. The letter noted that Plaintiff had been "absent from duty since April 2, 2021," but his "request for a leave of absence ha[d] been denied by UNUM as the requested certification was not received." *Id.* As a result, Plaintiff's leave was "unauthorized," according to New York Presbyterian, and

3

his employment was terminated. *Id.* Plaintiff alleges that the letter was not mailed until July 12, 2021 and that it may have been backdated by Defendant. Dkt. No. 25 ¶ 46.

On July 12, 2021, Unum sent Plaintiff a letter: (1) approving his FMLA leave for the period April 5, 2021 through June 1, 2021 (as noted above, Unum had previously approved the leave from April 5 through May 17); (2) affirming the denial of his FMLA leave for the period June 2, 2021 through July 6, 2021, and (3) approving his FMLA leave for July 7, 2021. Dkt. No. 47-3. New York Presbyterian claims to not have been aware of this approval at the time it chose to terminate Plaintiff. Dkt. No. 43 ¶ 37. Plaintiff alleges that New York Presbyterian's conduct violated the FMLA by interfering with his leave and retaliating against him for taking FMLA leave.

**DISCUSSION**

## I.    LEGAL STANDARD

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Linton v. Zorn*, 135 F.4th 19, 30 (2d Cir. 2025). A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Where, as here, the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can 'point to an absence of evidence to support an essential element of the nonmoving party's claim.'" *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015) (quoting *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)).

4

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in his pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  "But [a] motion for summary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (internal references omitted).

It is well established that courts must give "special solicitude" to *pro se* litigants in connection with motions for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  Thus, a court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." !*Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)).  This special solicitude is not unlimited, however, and does not "relieve" a plaintiff of his or her "duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal references omitted).  "In other words, 'the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-

write it.'" *Cheng v. United States*, 725 F. Supp. 3d 432, 437 (S.D.N.Y. 2024), *aff'd,* 132 F.4th 655 (2d Cir. 2025) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

## II.    FMLA CLAIMS

The FMLA "provides broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or her family." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 165–66 (2d Cir. 2017). It allows for eligible employees to take "12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "The Second Circuit recognizes two types of FMLA claims—'interference' claims and 'retaliation' claims." *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 362 (S.D.N.Y. 2016). An FMLA interference claim can be brought when an "employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Woods*, 864 F.3d at 166. "'Retaliation' claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer." *Id.* Here, Plaintiff brings both FMLA interference and retaliation claims against New York Presbyterian.

### A.  FMLA Interference Claim

Prevailing on an FMLA interference claim requires a plaintiff to establish: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

The only elements in dispute as to Plaintiff's FMLA interference claim are whether Plaintiff was entitled to take FMLA leave and whether he was denied the benefits to which he was entitled under the FMLA. *See* Dkt. No. 42 at 3. Defendant argues that Plaintiff's claim still fails as a matter of law because Plaintiff was not entitled to FMLA leave due to his failure to submit the necessary medical certification from his healthcare provider. *Id.* The Court disagrees.

Section 261(a) permits an employer to require that an employee requesting FMLA leave file a certification by a health care provider in support of the request. 29 U.S.C. § 261(a). If an employer adopts that requirement, however, the employer must do so consistent with 29 C.F.R. § 825.305. *Porter v. New York Univ. Sch. of L.*, No. 99-CV-04693 (TPG), 2003 WL 22004841, at *6 (S.D.N.Y. Aug. 25, 2003), *aff'd*, 392 F.3d 530 (2d Cir. 2004). The regulation provides that "[a]n employer may require that an employee's leave. . . be supported by a certification issued by the health care provider of the employee." 29 C.F.R. § 825.305(a). "An employer must give notice of a requirement for certification each time a certification is required." *Id.* An employee must provide the certification to the employer "within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification." *Id.* § 825.305(b).

There is a genuine dispute of material fact that precludes granting summary judgment over whether Plaintiff provided a certification within the requisite time set forth in 29 C.F.R. § 825.305. Defendant argues that "[o]nce Plaintiff failed to submit a complete and sufficient certification as expressly requested by UNUM, Plaintiff was not eligible for FMLA leave." Dkt. No. 42 at 3. However, this case is not that simple. It is true that Plaintiff undisputedly failed to

7

provide the certification required for extending his leave beyond May 17, 2021, by June 5, 2021, as requested by Unum. However, a reasonable jury could conclude that Unum implicitly waived and extended the June 5, 2021 deadline for Plaintiff to submit the necessary medical certification by continuing to correspond with Plaintiff and his healthcare provider following that date regarding the necessary medical certifications for Plaintiff's request for continued leave. The undisputed record shows that after June 5, 2021, Unum, acting as an agent for Defendant, continued to pursue Plaintiff's medical certification. Dkt. No. 55-1 at 3. Unum's actions involved, among other things, sending Plaintiff's physician a letter on June 29, 2021—well after the June 5, 2021 deadline—requesting the certification and leaving open the deadline to provide it. *Id.* This continued correspondence ultimately resulted in Unum retroactively approving part of Plaintiff's previously denied FMLA leave. Dkt. No. 47-3. Based on Unum's course of conduct, a reasonable jury could conclude that Unum extended the deadline for Plaintiff to provide a medical certification, and that Plaintiff provided the certification within the extended time period. Thus, there is a genuine dispute of material fact over whether Plaintiff was entitled to FMLA leave for the period at issue here.

There is also a genuine dispute of material fact over the fifth element of Plaintiff's prima facie case for FMLA interference: whether Plaintiff was denied the benefit of FMLA leave to which he was entitled. "FMLA rights have two parts—the right to take leave and the right to reinstatement." *Woods*, 864 F.3d at 167. Defendant terminated Plaintiff before he had taken the statutory maximum of twelve weeks of FMLA leave and while he was in the process of seeking to apply for additional FMLA leave. Defendant also sought to terminate Plaintiff for missing work on days for which Plaintiff was subsequently granted FMLA leave. *See* Dkt. No. 46-3 (terminating Plaintiff for taking "unauthorized leave" after his initial request for additional

FMLA leave was denied); Dkt. No. 47-3 (letter from Unum retroactively approving a portion of Plaintiff's FMLA leave).

Based on this course of events, a reasonable jury could conclude that Defendant's actions interfered with both Plaintiff's right to take FMLA leave and his right to reinstatement. Similarly, a reasonable jury could conclude that Defendant's actions deterred Plaintiff from continuing to correspond with Unum and his healthcare provider to submit the documentation necessary to obtain FMLA approval for the full period in which he was absent from employment. Because Plaintiff "may well have been entitled to leave . . . and may, therefore, be able to show that defendants interfered with that leave," *Graziadio*, 817 F.3d at 428, summary judgment for Defendant is DENIED on Plaintiff's FMLA interference claim.

### B. FMLA Retaliation Claim

FMLA retaliation claims are analyzed under the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 429. Under that framework, a plaintiff must first establish a prima facie case of FMLA retaliation. To do so, a plaintiff must establish that "(1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Lulo v. OTG Mgmt., LLC*, No. 19-CV-03776 (PAE), 2022 WL 409224, at *5 (S.D.N.Y. Feb. 10, 2022) (citing *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)). "If the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions; if the defendant does so, the plaintiff must then show that defendant's proffered explanation is pretextual." *Graziadio*, 817 F.3d at 429.

Defendant argues that Plaintiff cannot make out a prima facie case for retaliation because (1) he was not able to return to work by July 2, 2021, (and was therefore not qualified for his

9

role) and, (2) Plaintiff's termination does not give rise to inference of retaliatory intent. Dkt. No. 42 at 4–9. These arguments fail. First, there is a genuine dispute of material fact over when Plaintiff's FMLA leave ended and when he was required to return to work. Defendant argues that Plaintiff was required to return to work on July 2, 2021. *Id.* at 5. However, Defendant set the July 2, 2021 deadline for Plaintiff to return to work based on a belief that Plaintiff had been on unauthorized leave for a period of several months. Dkt. No. 46-2. By the time Plaintiff was terminated, Unum, acting as Defendant's agent, was already in the process of approving Plaintiff's leave for an additional chunk of the time that Defendant previously characterized as unauthorized. Dkt. No. 47-3. Had Defendant known that Plaintiff would ultimately be authorized for FMLA leave during that period, Defendant may have set a different deadline for Plaintiff to return to work.[2] Moreover, Plaintiff was still not medically cleared to return to work in July 2021, but also had not yet exhausted the statutory maximum of twelve weeks of leave under the FMLA, and was continuing to provide medical documentation to Unum. Thus, because it is not clear whether Plaintiff was in fact required to return to work on July 2, 2021, had all relevant facts been known by Defendant (including the actions of its agent, Unum), Defendant cannot unambiguously establish as a matter of law that Plaintiff was not qualified for his role at the conclusion of his FMLA leave.

Furthermore, the record does not sufficiently establish that Plaintiff was not qualified for his role on July 2, 2021. Although Plaintiff testified that he was not cleared to go back to work

---

[2] Defendant states that even if it had been aware of Unum's 1-day retroactive approval for Plaintiff's leave on July 7, 2021, "it would not have changed Defendant's decision to terminate Plaintiff's employment because Plaintiff had already been out on an unapproved absence since May 18, 2021, and he failed to return to work by the July 2, 2021 deadline established by Defendant in its June 24, 2021 letter." Dkt. No. 43 ¶ 38. However, this statement does not address how Defendant would have acted had it had been aware that Unum also retroactively approved Plaintiff's leave for the period May 18, 2021 to June 2, 2021. *See* Dkt. No. 47-3.

until September 2021, Dkt. No 46-1 at 61:13–19, there is not sufficient evidence in the record to conclude whether Plaintiff was "qualified" to perform the essential functions of his job on July 2, 2021. This is particularly true under the case law of this Circuit where the "ordinary standard for showing qualification is not exacting: the . . . plaintiff must show only that he possesses the basic skills necessary for performance of the job." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 151 (2d Cir. 2012). Given the ambiguity surrounding the requirements of Plaintiff's return to work and his capabilities during the summer of 2021, a reasonable jury may conclude that Plaintiff can satisfy the second element of the prima facie test.

Plaintiff is also able to establish that his termination occurred under circumstances giving rise to an inference of retaliatory intent. Such an inference "can be established when there is a basis for a jury to conclude that a causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer." *Id.* at 152. Here, Plaintiff was in the process of seeking continued authorization for his FMLA leave when Defendant fired him for taking that leave, asserting it was unauthorized. Under these circumstances, it is possible that a jury could reasonably conclude that Plaintiff was fired as a result of seeking FMLA leave. Thus, Plaintiff may be able to make out a prima facie case for retaliation.[3]

Applying the *McDonnell Douglas* framework to Plaintiff's retaliation claim, summary judgment is improper because a jury could reasonably find that Defendant has not provided a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant argues that "Plaintiff's failure to return to work by July 2, 2021, after having been denied FMLA leave and

---

[3] A reasonable jury could also conclude that Plaintiff's termination was exclusively due to his unauthorized absence. However, because Unum, acting as Defendant's agent, was in the process of approving further FMLA leave during the allegedly unauthorized period it cannot be established as a matter of law that Plaintiff's termination lacked retaliatory intent. Accordingly, the question of retaliatory intent is one for a jury to decide and cannot be decided on summary judgment.

therefore out on an unauthorized absence for over 6 weeks, resulted in Defendant's Human Resources Department's decision to terminate his employment." Dkt. No. 42 at 7. But during the time that Defendant characterized as an "unauthorized absence," Plaintiff was in the process of meeting the requirements for authorized FMLA leave and corresponding with Defendant's agent (Unum) about such leave. Furthermore, the record demonstrates that Plaintiff's leave ultimately was authorized for at least part of that six-week period. Dkt. No. 47-3. Defendant does not appear to have taken any action to address that retroactive authorization. Under these circumstances, a jury could reasonably conclude that Plaintiff was terminated in retaliation for applying for and taking FMLA leave. Thus, summary judgment on Plaintiff's FMLA retaliation claim is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is DENIED.

Dated: February 25, 2026
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge